IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZHIHUI CAO,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants | Civil Action No. 2:26-cv-00785-WSS |

**DEFENDANTS DRONEWING AND HOMVOS-US'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Defendants Dronewing (Seller ID: A7P4HB58SCZKC) and homvos-us (Seller ID: A19K1UHXFMG83E) (collectively, "Defendants") respectfully oppose Plaintiff Zhihui Cao's Motion for Preliminary Injunction. A preliminary injunction is an extraordinary remedy that may not issue unless the movant establishes a likelihood of success on the merits. Plaintiff cannot.

The asserted patent, U.S. Patent No. 12,537,933 B2 (the "'933 Patent"), claims a portable multifunctional detection instrument. A product materially identical to Defendants' accused products—sold under the "Koilboane" brand, Amazon ASIN B0CP5GY72Z—was publicly offered for sale on Amazon's Italian marketplace no later than January 30, 2024, as confirmed by a verified customer purchase. That date is **eighteen months** before the '933 Patent's July 2, 2025 filing date, well outside the one-year grace period.

These two facts—that the prior sale product and the accused products are the same device, and that the prior sale predates the filing date by eighteen months—place Plaintiff in an **inescapable dilemma**. If the asserted claim is construed broadly enough to read on Defendants'

1

accused products, it equally reads on the identical Koilboane product, which renders the '933 Patent invalid under the on-sale bar of 35 U.S.C. § 102(a)(1). If the asserted claim is construed narrowly enough to survive that prior sale, it does not reach Defendants' identical products, and Defendants do not infringe. There is no path to both validity and infringement.

Because Plaintiff cannot establish a likelihood of success—and likewise cannot show irreparable harm, a favorable balance of hardships, or that an injunction would serve the public interest — the Motion for Preliminary Injunction should be denied.

## II. BACKGROUND

### A. The '933 Patent.

U.S. Patent No. 12,537,933 B2 (the "'933 Patent") issued on January 27, 2026, from an application filed on July 2, 2025, listing Zhihui Cao as the inventor. The '933 Patent claims no priority to any earlier or foreign application; its effective filing date is therefore July 2, 2025.



**Fig.1 - Figure 1 of the '933 Patent**

The '933 Patent has a single independent claim, Claim 1, which reads in full:

> A portable multifunctional detection instrument, comprising a housing (1), wherein the housing (1) is provided with a handheld part (11), a control circuit board (2) is disposed in the housing (1), an infrared detector (3) and a red light generator (4) are disposed on the housing (1), both the infrared detector (3) and the red light generator (4) are electrically connected to the control circuit board

(2), the infrared detector (3) is configured to detect red light emitted by a camera, the red light generator (4) is configured to emit red light toward the camera, and the control circuit board (2) is further provided with a signal detection module (5) to detect whether a communication signal exists around.

By its plain terms, Claim 1 requires an infrared detector disposed on the housing, electrically connected to the control circuit board, and configured to detect red light emitted by a camera. An apparatus that lacks such an infrared detector falls outside the claim.

**B. The Accused Products.**

Defendants Dronewing and homvos-us are Amazon marketplace sellers of portable hidden camera detection instruments. Their accused products incorporate a radio frequency signal detection module covering 100MHz–8GHz, an LED flashing light, an infrared scan filter, a magnetic GPS detection mode, and a flashlight function.



**Fig. 2 - Accused Products**

The accused products do not contain any infrared detector that electronically detects red light reflected from a camera. Instead, their infrared camera-finding function relies entirely on the

human eye: the user illuminates the space with the LED light and looks through a red filter to spot a reflection. As the user manual instructs, the user must "use your eyes to look through the red filter. If there is a suspicious reflection of red spot, that may be a camera lens." *See* Exhibit B.

**C. The Koilboane Prior Sale Product.**

Before the '933 Patent's filing date, a product bearing ASIN B0CP5GY72Z was publicly sold on Amazon's Italian marketplace under the "Koilboane" brand. A verified customer purchase review was posted on Amazon.it on January 30, 2024 — eighteen months before the July 2, 2025 filing date. *See* Exhibit A and Exhibit C.



**Fig. 3 - The Koilboane Prior Sale Product**

The January 30, 2024 verified purchase review is especially probative because the reviewer uploaded a photograph of the product actually received. *See* Exhibit C. That photograph shows the same S500 packaging and the same elongated black handheld device with the same vertical indicator-light array, three-button layout, lower circular opening, and overall form factor shown in the Koilboane listing and in Defendants' accused products. Thus, the prior-sale evidence includes

both the Amazon.it listing for ASIN B0CP5GY72Z and a customer photograph tied to a verified purchase before the critical date.



**Fig. 4 - Verified customer purchase review posted on Amazon.it on January 30, 2024**

The Koilboane product operates in exactly the same way as the accused products. It too contains no infrared detector; its infrared camera-finding function likewise relies entirely on the human eye, instructing the user to "Usa il filtro rosso per scansionare ogni angolo della stanza, quando trovi un punto riflesso, quello è l'obiettivo della fotocamera" ("Use the red filter to scan every corner of the room; when you find a reflected point, that is the camera lens"). *See* Exhibit A. As set forth in Section II.D, the Koilboane product and the accused products are identical in every respect material to the asserted claim.

**D. The Products Are Materially Identical in Every Respect Relevant to the Asserted Claim.**

The Koilboane B0CP5GY72Z prior sale product and Defendants' accused products are visually indistinguishable. A side-by-side comparison confirms that they share the same housing

shape, the same vertical row of indicator lights, the same three-button control layout, the same red

filter and IR window placement, and the same overall form factor. *See* Exhibit A (Koilboane

B0CP5GY72Z product listing, Amazon.it); Exhibit B (Defendants' product user manual).



**Fig.5 - Side-by-Side Product Appearance: Koilboane B0CP5GY72Z (left) and**

**Defendants' Accused Product (right)**

The two products are equally identical in every measurable specification, as confirmed by

their respective product documentation:



6

4. Flashlight This detector has 5 levels of adjustable sensitivity, using different sensitivities can help you quickly and accurately find the position of the signal source. Ideal gift for your friends or loved ones.

· 【Compact and Portable Hidden Camera Detector】 Koilboane spy detector is small (2 * 1.5 * 8.6 cm), lightweight (24g), very easy to carry and use. You can use it in many places such as changing room, conference room, bathroom, hotel, rental home Airbnb room, office, etc., using it to protect your personal privacy and important information anywhere.

· 【Battery-Powered Spy Detector】 The hidden camera detector is equipped with a rechargeable 800mAh lithium-ion battery, which only takes 2 hours to fully charge. Up to 30 days standby time, even if used continuously for 25 hours, it will not stop working, solving the anxiety of battery life. It is the best choice for traveling.

### Specifiche del rilev

| Gamma di frequenze RF | 100M Hz–8G Hz |
|---|---|
| Guadagno dell'antenna | >73db |
| Ingresso di carica | CC 5V/1A |
| Gamma di scansione laser | 1-5 meter |

## /atore di microspie

| Metodo di allarme | Emette un segnale acustico/modalità vibrazione |
|---|---|
| Batteria | 3.7V/800mAh |
| Porta di ricarica | Tipo C |
| Materiale | PC+ABS |

### 2. Basic Specifications

| Volume | 16*21*88 MM |
|---|---|
| Weight | 24g |
| Charging interface | Type-C |
| Working hours | 25 hours |
| Antenna gain | >73DB |
| Power plug | DC5V/1A |
| Battery | 800mAh |
| Sensitivity | 5 levels adjustable |
| Receiving frequency range | 100M Hz-8G Hz |
| Signal detection range | 2.4G:10mw;1.2G:10mw; 2G、3G、4G:15 square meters |
| Laser detection | 1-5 meters |
| Material | PC+ABS |
| Charging time | 2.5 hours |

**Fig.6 - Screenshots of Product Specifications: Koilboane B0CP5GY72Z Amazon.it Listing (left) and Defendants' Accused Products User Manual (right)**

The key specifications extracted from the foregoing product documentation are summarized in the table below:

| Specification | Koilboane B0CP5GY72Z | Defendants' Products |
|---|---|---|
| Weight | 24g | 24g |
| Battery | 800mAh | 800mAh |
| Receiving Frequency Range | 100MHz–8GHz | 100MHz–8GHz |
| Antenna Gain | >73dB | >73dB |
| Sensitivity | 5 adjustable levels | 5 adjustable levels |
| Laser Detection Range | 1–5 meters | 1–5 meters |
| Material | PC+ABS | PC+ABS |
| Charging Interface / Input | Type-C / DC5V/1A | Type-C / DC5V/1A |
| Working Hours | 25 hours | 25 hours |
| Alert Method | Beep / Vibration | Beep / Vibration |
| Operating Modes | (1) Wireless Signal Detection (2) Infrared Camera Lens Detection (3) Magnetic GPS Detection (4) Flashlight | (1) Wireless Signal Detection (2) Infrared Camera Lens Detection (3) Magnetic GPS Detection (4) Flashlight |

As the foregoing comparison confirms, the two products are **identical** in weight, battery capacity, receiving frequency range, antenna gain, sensitivity levels, laser detection range, material composition, charging interface and input, working hours, alert method, and all four operating modes.

Specification-level identity, however, is not the critical point. The two products are identical in light of every element of the asserted claim—including the element whose absence is dispositive. The following comparison maps each claim element against both products using the products' own language:

| Element of the Asserted Claim | Koilboane B0CP5GY72Z | Defendants' Products | Prior Sale vs. Accused Products |
|---|---|---|---|
| a housing (1), wherein | PC+ABS body; "3 | PC+ABS body; Power | Prior sale = |

| Element of the Asserted Claim | Koilboane B0CP5GY72Z | Defendants' Products | Prior Sale vs. Accused Products |
|---|---|---|---|
| the housing (1) is provided with a handheld part (11) | buttons on body, all operations can be done with one hand"; fits in jeans pocket | ON/OFF Switch, Mode switch button, Sensitivity adjust button, Voice switch button; single-hand operation confirmed in user manual | Accused Products.<br><br>Both present. |
| a control circuit board (2) is disposed in the housing (1) | "Advanced technology and latest smart chip"; 4 electronic modes; 5-level sensitivity switching | Electronic circuit enabling 4 distinct operating modes; 5-level sensitivity adjustment | Prior sale = Accused Products.<br><br>Both present. |
| an infrared detector (3) and a red light generator (4) are disposed on the housing (1), both the infrared detector (3) and the red light generator (4) are electrically connected to the control circuit board (2), the infrared detector (3) is configured to detect red light emitted by a camera | The product uses 3 IR LEDs to emit light and instructs the user to "Usa il filtro rosso per scansionare ogni angolo della stanza, quando trovi un punto riflesso, quello è l'obiettivo della fotocamera" ("Use the red filter to scan every corner of the room; when you find a reflected point, that is the camera lens"). The detecting subject is the user's eye, not the device.<br><br>Accordingly, this product has no infrared detector electrically connected to the control circuit board, and does not meet the limitation "an infrared detector (3) ... electrically connected to the control circuit board (2) ... configured to detect red | The product uses an LED flashing light and an infrared scan filter and instructs the user to "use your eyes to look through the red filter. If there is a suspicious reflection of red spot, that may be a camera lens." The detecting subject is the user's eye, not the device.<br><br>Accordingly, this product has no infrared detector electrically connected to the control circuit board, and does not meet the limitation "an infrared detector (3) ... electrically connected to the control circuit board (2) ... configured to detect red light emitted by a camera." The infrared scan filter is a passive optical element connected to nothing. | Prior sale = Accused Products.<br><br>Both absent. No infringement. |

| Element of the Asserted Claim | Koilboane B0CP5GY72Z | Defendants' Products | Prior Sale vs. Accused Products |
|---|---|---|---|
| | light emitted by a camera." The red filter is a passive optical element connected to nothing. | | |
| the red light generator (4) is configured to emit red light toward the camera | Present. 3 IR/red LEDs on back of housing, electrically activated, emit light into detection space | Present. LED flashing light, component #2 in product structure diagram, electrically activated, emits light into detection space | Prior sale = Accused Products.<br><br>Both present. |
| the control circuit board (2) is further provided with a signal detection module (5) to detect whether a communication signal exists around | Present. RF detection 100MHz–8GHz; detects 2G/3G/4G/GSM; 5 sensitivity levels; audible beep upon signal detection | Present. Wireless Signal Detection mode; 100MHz–8GHz; detects 2G/3G/4G; 5 sensitivity levels; beep/vibration upon signal detection | Prior sale = Accused Products.<br><br>Both present. |

*See* Exhibit A; Exhibit B.

### III. LEGAL STANDARD

A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176–79 (3d Cir. 2017). The movant bears the burden of establishing each element. A preliminary injunction is "an extraordinary and drastic remedy" that is "never awarded as of right." *Winter*, 555 U.S. at 24; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In patent cases, likelihood of success on the merits is governed by Federal Circuit law. *ABC*

*Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). The patentee must show it will likely prove infringement and that the claims are not vulnerable to a substantial invalidity challenge. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001). If a defendant raises a substantial question as to either infringement or validity, "the preliminary injunction should not issue." *Id*. Any presumption of irreparable harm in patent cases was categorically abrogated by *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006).

## IV. ARGUMENT

**A. Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits.**

**1. An Inescapable Dilemma: If the Asserted Claim Reads on the Accused Products, It Is Invalid; If It Does Not, Defendants Do Not Infringe.**

As shown in Section II.C, the Koilboane prior sale product (ASIN B0CP5GY72Z) and Defendants' accused products are the same device, indistinguishable in every element of the asserted claim. That product was publicly sold on Amazon.it, as confirmed by a verified customer purchase review dated January 30, 2024 — eighteen months before the '933 Patent's July 2, 2025 filing date. *See* Exhibit A.

That identity is dispositive: if the claim of the '933 Patent reads on the accused products, it is invalid; if it does not, Defendants do not infringe. If the claim is construed to read on Defendants' accused products, it necessarily reads on the materially identical Koilboane product, which was on sale eighteen months before the filing date and therefore renders the patent invalid under the on-sale bar of 35 U.S.C. § 102(a)(1). *See Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318–19 (Fed. Cir. 1999) (a commercial sale of an invention by a third party is sufficient to invalidate a patent). If instead the claim is construed narrowly enough to avoid the Koilboane prior sale, it equally does not read on Defendants' identical accused products, and Defendants do not infringe.

11

There is no path to both validity and infringement. Either way, Plaintiff cannot establish a likelihood of success, and the preliminary injunction must be denied. The two horns of the dilemma are developed below.

**2. If the Asserted Claim Reads on the Accused Products, the '933 Patent Is Invalid Under § 102(a)(1).**

The Koilboane product was publicly sold on Amazon.it no later than January 30, 2024 — eighteen months before the filing date. *See* Exhibit A. That sale is invalidating prior art regardless of who made it: if by a third party, § 102(a)(1) applies with no grace period at all; if by the inventor, the one-year grace period of § 102(b)(1)(A) expired six months before the sale. Either way, the patent is barred. *See id*. Because the Koilboane product is identical to the accused products in every element of the asserted claim, any construction reaching the accused products necessarily reaches the Koilboane product, rendering the patent invalid. At this stage, Defendants need only raise a "substantial question of invalidity." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377–79 (Fed. Cir. 2009). The documented sale of an identical product eighteen months before filing does far more.

**3. If the Asserted Claim Does Not Read on the Accused Products, Defendants Do Not Infringe.**

The asserted claim requires "an infrared detector (3) . . . electrically connected to the control circuit board (2) . . . configured to detect red light emitted by a camera." Defendants' products contain no such component. Their infrared camera-finding function instructs the user to "use your eyes to look through the red filter. If there is a suspicious reflection of red spot, that may be a camera lens." *See* Exhibit B. The detecting subject is the user's eye, not the device; the red filter is a passive optical element electrically connected to nothing; no infrared detector receives reflected light, transmits any signal to the control circuit board, or triggers any automated alert.

Because the accused products lack the infrared detector limitation, they do not infringe. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement.") (internal citation omitted).

### B. Plaintiff Has Failed to Demonstrate Likely Irreparable Harm.

Irreparable harm cannot flow from the enforcement of a patent that is invalid or not infringed. As shown in Section IV.A, the asserted claim either reads on the accused products — in which case it is invalid — or it does not, in which case Defendants do not infringe. Either way, Plaintiff cannot suffer cognizable harm, let alone irreparable harm, from Defendants' continued sale of non-infringing products or products covered only by an invalid patent.

Even setting that dispositive point aside, Plaintiff has made no showing of irreparable harm. A plaintiff seeking a preliminary injunction must affirmatively demonstrate that irreparable harm is "likely"—not merely possible—in the absence of relief. *Winter*, 555 U.S. at 22. There is no presumption of irreparable harm in patent cases. *eBay*, 547 U.S. at 392–93. The Third Circuit requires "affirmative evidence" of irreparable harm specific to the facts of the case, *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987); speculative harm does not suffice, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

Plaintiff has submitted no evidence of irreparable harm specifically attributable to Defendants' sales — no lost sales, price erosion, customer confusion, or harm to goodwill. Where harm can be fully compensated by monetary damages, it is not irreparable. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988); *Sampson v. Murray*, 415 U.S. 61, 90 (1974). And Defendants' funds remain frozen in Amazon's payment system, so any damages award would

be fully collectible. Plaintiff has demonstrated no inadequacy of legal remedies.

### C. The Balance of Hardships Strongly and Disproportionately Favors Defendants.

The balance of hardships is not close, and for a threshold reason: Plaintiff has no legitimate interest to weigh. As shown in Section IV.A, the asserted claim is either invalid or not infringed. A party asserting a patent it cannot enforce against products it cannot reach suffers no cognizable hardship from being denied an injunction. On the other side of the scale, Defendants face concrete, immediate, and severe harm. The asymmetry is documented in Plaintiff's own filings.

**Defendants' concrete harm.** The existing asset freeze has immobilized $26,721.75 in combined Amazon account funds belonging to Defendants Dronewing ($5,469.42) and homvos-us ($21,252.33). Defendants sell exclusively through the Amazon platform. The freeze has rendered Defendants unable to receive sales proceeds, reinvest in inventory, or operate normally, placing $218,016.06 in commercial activity at risk and threatening the effective cessation of Defendants' entire businesses. *See* Declaration of Dronewing Representative ¶¶ 3–6; Declaration of homvos-us Representative ¶¶ 3–6.

**Disproportionality confirmed by Plaintiff's own evidence.** Plaintiff's filing at ECF 23 ¶ 4 represents that the median frozen amount among the other fifteen defendants is less than $3,500. Defendants together account for $26,721.75 — approximately 7.6 times the median — without any individualized showing that they caused greater harm or pose greater risk of dissipation. Penalizing commercial activity with a disproportionate freeze serves no legitimate purpose of injunctive relief.

**Gross inadequacy of bond.** Plaintiff's $5,000 bond covers less than 18.7% of Defendants' frozen funds. Rule 65(c) requires security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ.

P. 65(c). A bond covering less than one-fifth of the frozen amount provides no meaningful protection if the injunction is later found improvidently granted. The Court should require a bond commensurate with the total frozen amount, or dissolve the freeze.

**Plaintiff's speculative harm.** Any harm to Plaintiff from dissolving the freeze is de minimis and fully compensable. Plaintiff has produced no evidence of concrete, noncompensable injury, and any damages — if Plaintiff were to prevail, which Defendants dispute — are calculable from sales records. The balance of hardships tilts overwhelmingly in Defendants' favor.

### D. The Public Interest Disfavors Injunctive Relief Based on a Facially Invalid Patent.

The public interest is not served by maintaining an injunction premised on a patent of doubtful validity. The public has a strong interest in ensuring that injunctions do not issue on the basis of meritless claims that suppress lawful competition — particularly where, as here, the asserted claim either reads on a product sold publicly eighteen months before the filing date, rendering it invalid, or does not reach Defendants' products at all.

The Schedule A litigation vehicle — in which a single plaintiff simultaneously sweeps in multiple Amazon sellers with an *ex parte* freeze order — amplifies the potential for harm when the underlying patent cannot be enforced. Sixteen defendants have had accounts frozen and been required to appear in Pittsburgh to defend modest sales, all on a patent whose validity is undermined by sales predating its filing. The public interest in a functioning and fair e-commerce marketplace, and in the integrity of the patent system, strongly favors dissolving the freeze and denying the preliminary injunction.

### V. CONCLUSION

For the foregoing reasons, Plaintiff cannot establish a likelihood of success on the merits, a likelihood of irreparable harm, a balance of hardships in its favor, or that an injunction would serve

the public interest. Defendants Dronewing and homvos-us respectfully request that the Court deny

Plaintiff's Motion for Preliminary Injunction.


Respectfully submitted,


Date: June 2, 2026                              By:    */s/ Xiangru Chen*
                                                       Xiangru Chen
                                                       Washington Bar No. 64505
                                                       Tel.: 315-250-7337
                                                       Email: xiangru.chen@lawmayus.com
                                                       Hongchang Deng
                                                       California Bar No. 354529
                                                       Tel.: 213-682-7241
                                                       Email: rdeng@lawmayus.com
                                                       Yi Yi
                                                       California Bar No.353482
                                                       Tel.: 747-241-3130
                                                       Email: yiyi@lawmayus.com
                                                       LawMay P.C.
                                                       2108 N St., Ste. 9124
                                                       Sacramento, CA 95816