**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZHIHUI CAO, | Civil Action No. 2:26-cv-00785-WSS |
| Plaintiff, | |
| v. | |
| SCHEDULE A DEFENDANTS, | |
| Defendants | |

**DEFENDANTS SMOFENG, WANG Q TWIST SHOP, AND YANGANG'S BOLD HUB'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Defendants smofeng (Defendant No. 8), Wang Q Twist Shop (Defendant No. 9), and Yangang's Bold Hub (Defendant No. 10) (collectively, "Defendants") respectfully oppose Plaintiff Zhihui Cao's Motion for Preliminary Injunction. A preliminary injunction is an extraordinary remedy that may not issue unless the movant establishes a likelihood of success on the merits. Plaintiff cannot.

The asserted patent, U.S. Patent No. 12,537,933 B2 (the "'933 Patent"), claims a portable multifunctional detection instrument. A product materially identical to Defendants' accused products—sold under the "Koilboane" brand, Amazon ASIN B0CP5GY72Z—was publicly offered for sale on Amazon's Italian marketplace no later than January 30, 2024, as confirmed by a verified customer purchase. That date is **eighteen months** before the '933 Patent's July 2, 2025 filing date, well outside the one-year grace period.

These two facts—that the prior sale product and the accused products are materially identical, and that the prior sale predates the filing date by eighteen months—place Plaintiff in an

**inescapable dilemma**. If the asserted claim is construed broadly enough to read on Defendants' accused products, the same theory would read on the materially identical Koilboane product, which renders the '933 Patent invalid under the on-sale bar of 35 U.S.C. § 102(a)(1). If the asserted claim is construed narrowly enough to survive that prior sale, it does not reach Defendants' materially identical products, and Defendants do not infringe. There is no path to both validity and infringement.

Plaintiff's submission on irreparable harm fares no better. Rather than offering case-specific evidence of concrete injury, Plaintiff relies entirely on generic boilerplate allegations that this Court has already found insufficient in materially identical Schedule A proceedings.

Because Plaintiff cannot establish a likelihood of success—and likewise cannot show irreparable harm, a favorable balance of hardships, or that an injunction would serve the public interest—the Motion for Preliminary Injunction should be denied.

## II. BACKGROUND

### A. The '933 Patent.

U.S. Patent No. 12,537,933 B2 (the "'933 Patent") issued on January 27, 2026, from an application filed on July 2, 2025, listing Zhihui Cao as the inventor. The '933 Patent claims no priority to any earlier or foreign application; its effective filing date is therefore July 2, 2025.



<div style="border: 1px solid black; padding: 10px; text-align: center;">

**Fig.1 - Figure 1 of the '933 Patent**

</div>

The '933 Patent has a single independent claim, Claim 1, which reads in full:

> A portable multifunctional detection instrument, comprising a housing (1), wherein the housing (1) is provided with a handheld part (11), a control circuit board (2) is disposed in the housing (1), an infrared detector (3) and a red light generator (4) are disposed on the housing (1), both the infrared detector (3) and the red light generator (4) are electrically connected to the control circuit board (2), the infrared detector (3) is configured to detect red light emitted by a camera, the red light generator (4) is configured to emit red light toward the camera, and the control circuit board (2) is further provided with a signal detection module (5) to detect whether a communication signal exists around.

By its plain terms, Claim 1 requires an infrared detector disposed on the housing, electrically connected to the control circuit board, and configured to detect red light emitted by a camera. An apparatus that lacks such an infrared detector falls outside the claim.

## B. The Accused Products.

Defendants smofeng, Wang Q Twist Shop, and Yangang's Bold Hub are Amazon marketplace sellers of portable hidden camera detection instruments. Their accused products incorporate a radio frequency signal detection module to detect wireless signals from hidden cameras, including 2.4GHz/5GHz signals, or GPS trackers; a red indicator light; an infrared lens viewfinder; a magnetic detection mode to detect magnetic fields from wired cameras or GPS trackers; a shake detection mode; and sound or vibration alert functionality. *See* Declaration of Mei Liu ("Mei Liu Decl.") ¶ 4.

3



**Fig. 2 - Accused Products (front and back)**

The accused products do not contain any infrared detector that electronically detects red light reflected from a camera. Instead, their infrared camera-finding function relies entirely on the human eye: the user activates IR Scanning Mode, looks through the infrared lens viewfinder, and scans the room. As the user manual instructs, hidden camera lenses will appear as "bright red dots on the screen." *See* Exhibit B; Mei Liu Decl. ¶¶ 4–9.

**C. The Koilboane Prior Sale Product.**

Before the **'**933 Patent's filing date, a product bearing ASIN B0CP5GY72Z was publicly sold on Amazon's Italian marketplace under the "Koilboane" brand. A verified customer purchase review was posted on Amazon.it on January 30, 2024—eighteen months before the July 2, 2025 filing date. *See* Exhibit A and Exhibit C; Declaration of Hongchang Deng ("Deng Decl.") ¶¶ 3–5.

4



**Fig. 3 - The Koilboane Prior Sale Product**

The January 30, 2024 verified purchase review is especially probative because the reviewer uploaded a photograph of the product actually received. That photograph shows the same S500 packaging and the same elongated black handheld device with the same vertical indicator-light array, three-button layout, lower circular opening, and overall form factor shown in the Koilboane listing and in Defendants' accused products. Thus, the prior-sale evidence includes both the Amazon.it listing for ASIN B0CP5GY72Z and a customer photograph tied to a verified purchase before the critical date. See Exhibit C; Deng Decl. ¶ 4.



**Fig. 4 - Verified customer purchase review posted on Amazon.it on January 30, 2024**

The Koilboane product operates in the same manner as the accused products. It too contains no infrared detector that electronically detects red light reflected from a camera; its infrared camera-finding function likewise relies entirely on the human eye. Both products use the same light-and-filter visual inspection route: the device emits light toward the detection area, and the user looks through a red filter or infrared lens-viewing component to identify reflected points from camera lenses. The Koilboane product instructs the user to "Usa il filtro rosso per scansionare ogni angolo della stanza, quando trovi un punto riflesso, quello è l'obiettivo della fotocamera" ("Use the red filter to scan every corner of the room; when you find a reflected point, that is the camera lens"). *See* Exhibit A; Deng Decl. ¶ 9. As set forth in Section II.D, the Koilboane product and the accused products are materially identical in every respect material to the asserted claim.

**D. The Products Are Materially Identical in Every Respect Relevant to the Asserted Claim.**

The Koilboane B0CP5GY72Z prior sale product and Defendants' accused products are

materially identical. A side-by-side comparison confirms that they share the same elongated handheld housing, the same vertical row of indicator lights, the same three-button control layout, the same red filter or infrared lens-viewing area, and the same overall portable detector form factor. See Exhibit A; Exhibit B; Deng Decl. ¶¶ 6–7; Mei Liu Decl. ¶¶ 4–12.



**Fig.5 - Side-by-Side Product Appearance: Koilboane B0CP5GY72Z (left) and**

**Defendants' Accused Product (right)**

The minor exterior variations between the product photographs and specifications do not change the analysis. Both products use the same underlying technical structure, functional modes, and operating logic: (1) a handheld detector housing; (2) internal electronic circuitry for selecting detection modes and adjusting sensitivity; (3) a signal-detection module for detecting surrounding wireless signals; (4) a red/IR light source for camera-lens finding; (5) a red filter or infrared lens-viewing component through which the user visually identifies reflected points from camera lenses; (6) magnetic detection functionality; and (7) flashlight functionality. Both rely on user visual inspection for camera-lens finding: the device illuminates the area, and the user looks through a red filter or infrared lens-viewing component to identify lens reflections. In both products, the detecting subject is the user's eye, not an electronic infrared detector. *See* Deng Decl. ¶¶ 8–10; Mei Liu Decl. ¶¶ 4–12.



| (1) | | |
|---|---|---|
| (2) | • 【Multifunctional Hidden Camera Ddetector】 This spy cam detector provides multifunctional detection: 1. Wireless signal detection 2. Magnetic GPS detection 3. Infrared light detection 4. Flashlight This detector has 5 levels of adjustable sensitivity, using different sensitivities can help you quickly and accurately find the position of the signal source. Ideal gift for your friends or loved ones. | Mode Switch button — Press it to switch detection modes Green Light= Magnetic detection Yellow light =Shake detection mode Blue light=FR detection mode Red light= IR Scan mode |



(3)

- 【Multifunctional Hidden Camera Ddetector】 This spy cam detector provides multifunctional detection: 1. Wireless signal detection 2. Magnetic GPS detection 3.

1) **RF Detection Mode** (Default Mode):

The blue light will light up

Detects wireless signals from hidden cameras (2.4GHz/5GHz) or GPS trackers. Move

(4)

(video subtitles translation: "Then short press the Mode button, the 3 infrared lights on the back will light up")

Red indicator light on the back

IR Scan mode for detecting hidden camera lenses, infrared light reflects off lens surfaces

(5)

(video subtitles translation: "At the same time, push up the infrared scanning filter.")

(translation: "Keep moving. Look for suspicious objects that reflect light.")

Infrared lens Viewfinder

A small screen used to scan for hidden camera lenses (infrared light reflects off lens surfaces).

(6)

9

| | | | |
|---|---|---|---|
| | • 【Multifunctional Hidden Camera Ddetector】 This spy cam detector provides multifunctional detection: 1. Wireless signal detection 2. Magnetic GPS detection 3. Infrared light detection 4. Flashlight This detector has 5 levels of adjustable sensitivity, using different sensitivities can help you quickly and accurately find the position of the signal source. Ideal gift for your friends or loved ones. | 2) Magnetic Detection Mode: The green light will light up ● Detects magnetic fields from wired cameras or GPS trackers. The device will flash | |
| (7) | • 【Multifunctional Hidden Camera Ddetector】 This spy cam detector provides multifunctional detection: 1. Wireless signal detection 2. Magnetic GPS detection 3. Infrared light detection 4. Flashlight This detector has 5 levels of adjustable sensitivity, using different sensitivities can help you quickly and accurately find the position of the signal source. Ideal gift for your friends or loved ones. | 1) RF Detection Mode (Default Mode): The blue light will light up. Detects wireless signals from hidden cameras (2.4GHz/5GHz) or GPS trackers. Move the device closer to the source,when the device flashes blue light and emits beeps (you also can press the button to switch vibration alert mode instead of beep) continuously, it means the hidden device is likely within 0.5 - 2 meters.The RF Signal Indicator(blue light) and alarm beeps will increases with signal strength. 2) Magnetic Detection Mode: The green light will light up ● Detects magnetic fields from wired cameras or GPS trackers. The device will flash | blue light and emit beeps (you also can press the button to switch vibration alert mode instead of beeps) continuously when near a strong magnetic source. 3) Shake Detection Mode: The yellow light will light up. The device will emit "beep" alarm sound and flash blue light continuously as soon as it is shaken. You can hang this device on the door handle, it will alert you when someone pushes the door. 4) IR Scanning Mode: Activates the red indicator light and viewfinder. Look through the viewfinder and scan the room (focus onsmall holes, smoke detectors, or decorative objects)Hidden camera lenses will appear as bright red dotson the screen. Warm Note: Dim the room lights (IR scanning works best in low light). **Step 3: Power Off** Press ON/OFF button to turn off the device. |
| **Fig.6 - Screenshots of Product Specifications: Koilboane B0CP5GY72Z Amazon.it Listing (left, Exhibit A) and Defendants' Accused Products User Manual (right, Exhibit B)** | | | |

In summary, the two products are materially identical in light of every element of the asserted claim—including the element whose absence is dispositive. The following comparison maps each claim element against both products using the products' own language:

| Element of the Asserted Claim | Koilboane B0CP5GY72Z | Defendants' Products | Prior Sale vs. Accused Products |
|---|---|---|---|
| a housing (1), wherein the housing (1) is provided with a handheld part (11) | "compact and portable," "very easy to carry and use" handheld body; "3 buttons on body, all operations can be done with one hand"; | "compact, powerful, portable" handheld body; | Materially identical structure. Both present. |
| a control circuit board (2) is disposed in the housing (1) | "Advanced technology and latest smart chip"; 4 electronic modes; 5-level sensitivity | "4-in-1 Professional Detector", including "Radio frequency (RF) signal detection, | Materially identical operating structure. |

| Element of the Asserted Claim | Koilboane B0CP5GY72Z | Defendants' Products | Prior Sale vs. Accused Products |
|---|---|---|---|
| | switching | Infrared (IR) lens scanning, Shake alarm detection mode and Magnetic field detection"; has "Power ON/OFF Switch" on the side, 3 buttons on the front of body: "Mode switch button," "Sensitivity adjust button," and "Voice/Vibration adjustment button" | Both present. |
| an infrared detector (3) and a red light generator (4) are disposed on the housing (1), both the infrared detector (3) and the red light generator (4) are electrically connected to the control circuit board (2), the infrared detector (3) is configured to detect red light emitted by a camera | The product uses 3 IR LEDs to emit light and instructs the user to "Usa il filtro rosso per scansionare ogni angolo della stanza, quando trovi un punto riflesso, quello è l'obiettivo della fotocamera" ("Use the red filter to scan every corner of the room; when you find a reflected point, that is the camera lens"). The detecting subject is the user's eye, not the device.<br><br>Accordingly, this product has **no infrared detector electrically connected to the control circuit board**, and does not meet the limitation "an infrared detector (3) ... electrically connected to the control circuit board (2) ... configured to | The product uses a "red indicator light on the back" and an "infrared lens viewfinder." The user manual instructs the user to "look through the viewfinder and scan the room," "hidden camera lenses will appear as bright red dots on the screen." The detecting subject is the user's eye, not the device.<br><br>Accordingly, this product has **no infrared detector electrically connected to the control circuit board**, and does not meet the limitation "an infrared detector (3) ... electrically connected to the control circuit board (2) ... configured to detect red light emitted by a camera." **The infrared lens viewfinder is a passive** | Prior sale = Accused Products.<br><br>Both absent an infrared detector that "electronically connected to the control circuit board." No infringement. |

11

| Element of the Asserted Claim | Koilboane B0CP5GY72Z | Defendants' Products | Prior Sale vs. Accused Products |
|---|---|---|---|
| | detect red light emitted by a camera." **The red filter is a passive optical element electrically connected to nothing.** | **optical element electrically connected to nothing.** | |
| the red light generator (4) is configured to emit red light toward the camera | Present. IR/red LEDs on back of housing, electrically activated, emit light into detection space for visual camera-lens finding. | Present. "Red indicator light on the back." "IR Scanning Mode activates the red indicator light" "for detecting hidden camera lenses, infrared light reflects off lens surfaces" | Prior sale = Accused Products.<br><br>Both present. |
| the control circuit board (2) is further provided with a signal detection module (5) to detect whether a communication signal exists around | Present. "Wireless signal detection" mode; RF detection 100MHz–8GHz; detects 2G/3G/4G/GSM; 5 sensitivity levels; audible beep upon signal detection | Present. "RF Signal Detection" mode "detects wireless signals from hidden cameras (2.4GHz/5GHz) or GPS trackers"; "when the device flashes blue light and emits beeps," "it means the hidden device is likely within 0.5-2 meters." | Prior sale = Accused Products.<br><br>Both present. |

See Exhibit A; Exhibit B; Exhibit D; Deng Decl. ¶¶ 6–10; Mei Liu Decl. ¶¶ 4–12.

### III. LEGAL STANDARD

A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176–79 (3d Cir. 2017). The movant bears the burden of establishing each element. A preliminary injunction is "an extraordinary and drastic remedy" that is "never awarded as of right." *Winter*,

555 U.S. at 24; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In patent cases, likelihood of success on the merits is governed by Federal Circuit law. *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). The patentee must show it will likely prove infringement and that the claims are not vulnerable to a substantial invalidity challenge. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001). If a defendant raises a substantial question as to either infringement or validity, "the preliminary injunction should not issue." *Id*. Any presumption of irreparable harm in patent cases was categorically abrogated by *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006).

## IV. ARGUMENT

### A. Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits.

### 1. An Inescapable Dilemma: If the Asserted Claim Reads on the Accused Products, It Is Invalid; If It Does Not, Defendants Do Not Infringe.

As shown in Section II.C, the Koilboane prior sale product (ASIN B0CP5GY72Z) and Defendants' accused products are materially identical in every element of the asserted claim. That product was publicly sold on Amazon.it, as confirmed by a verified customer purchase review dated January 30, 2024—eighteen months before the '933 Patent's July 2, 2025 filing date. *See* Exhibit A.

That identity is dispositive: if the claim of the '933 Patent reads on the accused products, it is invalid; if it does not, Defendants do not infringe. If the claim is construed to read on Defendants' accused products, it necessarily reads on the materially identical Koilboane product, which was on sale eighteen months before the filing date and therefore renders the patent invalid under the on-sale bar of 35 U.S.C. § 102(a)(1). *See Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318–19 (Fed. Cir. 1999) (a commercial sale of an invention by a third party is sufficient to invalidate a

patent). If instead the claim is construed narrowly enough to avoid the Koilboane prior sale, it equally does not read on Defendants' materially identical accused products, and Defendants do not infringe.

There is no path to both validity and infringement. Either way, Plaintiff cannot establish a likelihood of success, and the preliminary injunction must be denied. The two horns of the dilemma are developed below.

**2. If the Asserted Claim Reads on the Accused Products, the '933 Patent Is Invalid Under § 102(a)(1).**

The Koilboane product was publicly sold on Amazon.it no later than January 30, 2024—eighteen months before the filing date. *See* Exhibit A. That sale is invalidating prior art regardless of who made it: if by a third party, § 102(a)(1) applies with no grace period at all; if by the inventor, the one-year grace period of § 102(b)(1)(A) expired six months before the sale. Either way, the patent is barred. *See id*. Because the Koilboane product is materially identical to the accused products in every element of the asserted claim, any construction reaching the accused products necessarily reaches the Koilboane product, rendering the patent invalid. At this stage, Defendants need only raise a "substantial question of invalidity." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377–79 (Fed. Cir. 2009). The documented sale of a materially identical product eighteen months before filing does far more.

**3. If the Asserted Claim Does Not Read on the Accused Products, Defendants Do Not Infringe.**

The asserted claim requires "an infrared detector (3) . . . electrically connected to the control circuit board (2) . . . configured to detect red light emitted by a camera." Defendants' products contain no such component. Their infrared camera-finding function requires the user to activate IR Scanning Mode, look through the infrared lens viewfinder, and scan the room; the user manual

instructs that hidden camera lenses will appear as "bright red dots on the screen." *See* Exhibit B; Mei Liu Decl. ¶¶ 4–9. The detecting subject is the user's eye, not the device; the infrared lens viewfinder is a passive optical element electrically connected to nothing; no infrared detector receives reflected light, transmits any signal to the control circuit board, or triggers any automated alert. Because the accused products lack the infrared detector limitation, they do not infringe. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement.") (internal citation omitted).

### B. Plaintiff Has Failed to Demonstrate Likely Irreparable Harm.

#### 1. Plaintiff Cannot Demonstrate Irreparable Harm Because the Asserted Claim Is Either Invalid or Not Infringed.

Irreparable harm cannot flow from the enforcement of a patent that is invalid or not infringed. As shown in Section IV.A, the asserted claim either reads on the accused products—in which case it is invalid—or it does not, in which case Defendants do not infringe. Either way, Plaintiff cannot suffer cognizable harm, let alone irreparable harm, from Defendants' continued sale of non-infringing products or products covered only by an invalid patent.

Even setting that dispositive point aside, Plaintiff has made no showing of irreparable harm. A plaintiff seeking a preliminary injunction must affirmatively demonstrate that irreparable harm is "likely"—not merely possible—in the absence of relief. *Winter*, 555 U.S. at 22. There is no presumption of irreparable harm in patent cases. *eBay*, 547 U.S. at 392–93. The Third Circuit requires "affirmative evidence" of irreparable harm specific to the facts of the case, *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987); speculative harm does not suffice, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

15

Plaintiff has submitted no evidence of irreparable harm specifically attributable to Defendants' sales—no lost sales, price erosion, customer confusion, or harm to goodwill. Where harm can be fully compensated by monetary damages, it is not irreparable. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988); *Sampson v. Murray*, 415 U.S. 61, 90 (1974). And Defendants' funds remain frozen in Amazon's payment system—Defendants have not transferred or concealed any assets in connection with this litigation—so any damages award would be fully collectible. *See* Mei Liu Decl. ¶ 16. Plaintiff has demonstrated no inadequacy of legal remedies.

**2. This Court's Recent Precedent in an Identical Procedural Context Confirms That Plaintiff's Showing Is Independently Insufficient.**

Plaintiff's irreparable harm showing here is substantively indistinguishable from the showing this Court found inadequate in *Fu v. Allriver-Direct, et al.*, Civil Action No. 2:25-cv-615 (W.D. Pa. June 2, 2025) (Stickman, J.). In *Fu*, this Court vacated a previously-entered TRO and denied a preliminary injunction in a materially identical Schedule A patent infringement case, holding that the plaintiff had wholly failed to demonstrate irreparable harm. The Court's reasoning applies with full force here.

In Fu, as here, the plaintiff's complaint and supporting brief offered only "stock allegations and generalities" about irreparable harm, with no "case-specific examples of irreparable harm actually suffered." *Fu*, slip op. at 7, 11. The Court held that "Maybe is not enough. Speculation is not enough." *Id*. The plaintiff in *Fu* could articulate only that "maybe we're losing sales, maybe we're losing reputation"—precisely the type of speculative, unsubstantiated assertion that the Federal Circuit has held insufficient. *See Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374–77 (Fed. Cir. 2012) (holding that conclusory statements and theoretical arguments are insufficient; irreparable harm must be supported by concrete evidence).

Plaintiff Zhihui Cao's showing here is no more particularized. Plaintiff's Memorandum in Support of the Motion for Preliminary Injunction ("Plaintiff's Memorandum") recites the same categories of harm this Court rejected in *Fu*: alleged price erosion, loss of goodwill, loss of market share, and risk of asset dissipation. *See* Plaintiff's Memorandum at 7–9. Like the plaintiff in Fu, Plaintiff here offers no declaration establishing actual lost sales, no market analysis quantifying competitive impact, and no evidence that any harm is causally attributable to Defendants specifically. Plaintiff's evidentiary submissions consist of two declarations, neither of which fills that gap.

The Declaration of Zheng Liu is wholly devoid of any evidence of harm: it addresses nothing more than procedural logistics and generic observations about other Amazon infringement cases drawn from counsel's review of the docket. *See* Declaration of Zheng Liu ¶¶ 1–13. It offers not a single factual assertion specific to Plaintiff's alleged injury. *Id.* Plaintiff's Memorandum also references a Declaration of Zhihui Cao, *see* Plaintiff's Memorandum at 7, yet that declaration—to the extent it was submitted—fares no better. It asserts in the most conclusory terms that Plaintiff "has lost significant market share and sales due to Defendants' infringing activity," without providing a single sales figure, no market share data, no customer loss evidence, and no analysis of any kind connecting Defendants' conduct to any specific harm suffered by Plaintiff. This is precisely the kind of showing—a self-serving declaration parroting the legal standard without a shred of supporting data—that this Court has already held to be insufficient. *Fu*, slip op. at 11–12.

The *Fu* opinion also sounded a broader warning directly applicable here. This Court observed that Schedule A patent cases in this District "frequently feature *pro-forma* papers that recite the requisite elements for injunctive relief but are light on case-specific detail," and made clear that "attorneys presenting patent infringement and similar claims against 'schedule A' defendants will

be expected to have a good faith factual basis for every element of their claims." *Fu*, slip op. at 2 n.1, 12 n.6. Plaintiff's Memorandum is precisely the type of form brief the Court cautioned against. The result should be the same: denial of preliminary injunctive relief.

**C. The Balance of Hardships Strongly and Disproportionately Favors Defendants.**

The balance of hardships is not close, and for a threshold reason: Plaintiff has no legitimate interest to weigh. As shown in Section IV.A, the asserted claim is either invalid or not infringed. A party asserting a patent it cannot enforce against products it cannot reach suffers no cognizable hardship from being denied an injunction. On the other side of the scale, Defendants face concrete, immediate, and severe harm. The asymmetry is documented in Plaintiff's own filings.

**Defendants' concrete harm.** The existing asset freeze has immobilized Amazon account funds belonging to Defendants smofeng, Wang Q Twist Shop, and Yangang's Bold Hub. Defendants sell exclusively through the Amazon platform. *See* Mei Liu Decl. ¶ 2. The freeze has rendered Defendants unable to receive sales proceeds, reinvest in inventory, or operate normally, threatening the effective cessation of Defendants' entire businesses. *See* Mei Liu Decl. ¶¶ 13–15.

**Disproportionality confirmed by Plaintiff's own evidence.** Plaintiff has made no individualized showing that Defendants caused greater harm or pose greater risk of dissipation. Penalizing commercial activity with a disproportionate freeze serves no legitimate purpose of injunctive relief.

**Gross inadequacy of bond.** Rule 65(c) requires security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Plaintiff's bond does not adequately protect Defendants from the business disruption, lost access to operating capital, and other costs they may sustain if the injunction is later found improvidently granted. The Court should require a bond

commensurate with Defendants' potential damages, or dissolve the freeze.

**Plaintiff's speculative harm.** Any harm to Plaintiff from dissolving the freeze is de minimis and fully compensable. Plaintiff has produced no evidence of concrete, noncompensable injury, and any damages—if Plaintiff were to prevail, which Defendants dispute—are calculable from sales records. The balance of hardships tilts overwhelmingly in Defendants' favor.

### D. The Public Interest Disfavors Injunctive Relief Based on a Facially Invalid Patent.

The public interest is not served by maintaining an injunction premised on a patent of doubtful validity. The public has a strong interest in ensuring that injunctions do not issue on the basis of meritless claims that suppress lawful competition—particularly where, as here, the asserted claim either reads on a product sold publicly eighteen months before the filing date, rendering it invalid, or does not reach Defendants' products at all.

The Schedule A litigation vehicle—in which a single plaintiff simultaneously sweeps in multiple Amazon sellers with an *ex parte* freeze order—amplifies the potential for harm when the underlying patent cannot be enforced. Sixteen defendants have had accounts frozen and been required to appear in Pittsburgh to defend modest sales, all on a patent whose validity is undermined by sales predating its filing. As this Court has observed in an identical procedural context, "The Court is not a rubber stamp. Parties appearing before it and seeking relief need to come prepared to meet their burden." *Fu*, slip op. at 12. The public interest in a functioning and fair e-commerce marketplace, and in the integrity of the patent system, strongly favors dissolving the freeze and denying the preliminary injunction.

### V. CONCLUSION

For the foregoing reasons, Plaintiff cannot establish a likelihood of success on the merits, a likelihood of irreparable harm, a balance of hardships in its favor, or that an injunction would serve

the public interest. Defendants smofeng, Wang Q Twist Shop, and Yangang's Bold Hub respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction and dissolve the existing asset freeze on Defendants' Amazon accounts.

Respectfully submitted,

Date: June 11, 2026

By:  /s/ *Xiangru Chen*
Xiangru Chen
Washington Bar No. 64505
Tel.: 315 250 7337
Email: xiangru.chen@lawmayus.com
Hongchang Deng
California Bar No. 354529
Tel.: 213 682 7241
Email: rdeng@lawmayus.com
Yi Yi
California Bar No.353482
Tel.: 747-241-3130
Email: yiyi@lawmayus.com
LawMay P.C.
2108 N St., Ste. 9124
Sacramento, CA 95816