**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZHIHUI CAO,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants | Civil Action No. 2:26-cv-00785-WSS |

**DECLARATION OF MEI LIU IN SUPPORT OF DEFENDANTS SMOFENG, WANG Q TWIST SHOP, AND YANGANG'S BOLD HUB'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Mei Liu, declare as follows:

1.    My name is Mei Liu. I am the authorized representative of the Amazon seller accounts known as smofeng (Defendant No. 8), Wang Q Twist Shop (Defendant No. 9), and Yangang's Bold Hub (Defendant No. 10). For purposes of this Declaration, "Defendants" refers to smofeng, Wang Q Twist Shop, and Yangang's Bold Hub. I am authorized to submit this Declaration on behalf of Defendants in support of Defendants' opposition to Plaintiff's Motion for Preliminary Injunction. By virtue of my role as authorized representative, my familiarity with Defendants' Amazon seller accounts and products, and my review of relevant account records, product materials, and user manuals, I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2.    Defendants sell products exclusively through Amazon's marketplace. Defendants do not operate physical stores and do not sell through any other website or platform. Defendants' revenue is generated through their Amazon seller accounts.

1

3.    The main product sold through Defendants' Amazon seller accounts is the portable hidden camera detector that is at issue in this lawsuit. This product accounts for the majority of Defendants' sales across all three Amazon seller accounts. The accused products sold by all three Defendants are the same product, sharing the same design, internal components, functional modes, and operating instructions. The following statements regarding the technical characteristics of the accused products apply equally to all three Defendants' products.

4.    The accused products incorporate the following functional modes and components: a radio frequency signal detection module that detects wireless signals, including 2.4GHz and 5GHz signals from hidden cameras and GPS trackers; a red indicator light located on the back of the housing; an infrared lens viewfinder; a magnetic field detection mode for detecting magnetic fields from wired cameras or GPS trackers; a shake detection mode; and sound and vibration alert functionality.

5.    The accused products do not contain any infrared detector that electronically detects red light reflected from a camera. The infrared camera-finding function of the accused products does not involve any electronic detection of reflected light. Instead, that function operates as follows: the user activates IR Scanning Mode, which causes the red indicator light on the back of the housing to illuminate; the user then looks through the infrared lens viewfinder and visually scans the room; hidden camera lenses, if present, will appear as bright red dots as seen through the viewfinder. The detection is performed entirely by the user's eye. No component within the accused products electronically receives, measures, or processes reflected infrared or red light from any camera.

6.    The infrared lens viewfinder on the accused products is a passive optical

2

element. It is not electrically connected to the control circuit board or to any other internal electronic component of the accused products. It performs no electronic function. Its sole function is to allow the user to visually observe infrared or red light reflected from objects in the room.

7.    The accused products' user manual describes the IR Scanning Mode as follows: the user is instructed to "look through the viewfinder and scan the room," and the manual states that "hidden camera lenses will appear as bright red dots on the screen." At no point does the user manual describe or suggest that the device itself electronically detects reflected light or generates any automated alert based on reflected infrared or red light from a camera. A true and correct copy of the accused products' user manual is submitted herewith as Exhibit B.

8.    The accused products contain a control circuit board disposed within the housing. The control circuit board is electrically connected to the radio frequency signal detection module, the indicator lights, the mode selection buttons, the sensitivity adjustment button, and the alert output components. The infrared lens viewfinder is not electrically connected to the control circuit board.

9.    The accused products contain a red light generator in the form of infrared LEDs located on the back of the housing, which are electrically connected to the control circuit board and emit red or infrared light toward the detection area when IR Scanning Mode is activated. The accused products do not contain any separate component that receives or detects that emitted light after it reflects off any surface or object.

10.    I am also familiar with the Koilboane product bearing Amazon ASIN B0CP5GY72Z, which I have reviewed through the Amazon.it product listing and the

customer photograph attached to the verified purchase review dated January 30, 2024, referenced in this litigation.

11.    Based on my knowledge of the accused products and my review of the Koilboane product materials, the Koilboane product and the accused products share the same underlying technical structure and operating logic with respect to the infrared camera-finding function: both rely on the user looking through a red filter or infrared lens-viewing component to visually identify reflected points from camera lenses, and neither product contains any electronic infrared detector that detects reflected light and transmits a signal to a control circuit board.

12.    Both products use the same method for detecting hidden camera lenses: the device emits infrared or red light toward the detection area, and the user looks through a red filter or infrared lens-viewing component to visually identify any reflected points. In both products, no component within the device automatically detects or responds to reflected light from a camera. The detection is performed by the user's eye in both cases.

13.    Since the asset freeze was entered in this case, Defendants have not been able to access the money in their Amazon seller accounts. This includes money from sales completed before the freeze was put in place. To my knowledge, the funds remain frozen and unavailable to Defendants.

14.    Not being able to access these funds has put Defendants' businesses in serious difficulty. Defendants use the money from Amazon sales to purchase new inventory from suppliers. Because the account funds are frozen, Defendants have not been able to place new orders, existing inventory is running low, and Defendants have no practical way to restock. Defendants are also falling behind on payments Defendants owe to suppliers. If this

4

continues, Defendants will not be able to keep the business running.

15.   The funds currently frozen in the Amazon account of Defendants were generated through Defendants' ordinary Amazon sales, and Defendants need these funds to continue operating their businesses.

16.   To my knowledge, Defendants have not moved any money out of the Amazon seller accounts of smofeng, Wang Q Twist Shop, or Yangang's Bold Hub, and have not done anything to hide assets since this lawsuit was filed. The frozen funds remain in Defendants' Amazon seller accounts.

8. Defendants have operated legitimate businesses on Amazon. The products sold by Defendants are purchased from suppliers and sold openly on Amazon's platform. Defendants intend to participate fully in this case and comply with any orders from this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 11, 2026, at Changsha City, Hunan Province, China.

Mei Liu

*Mei Liu*

*2026. 6. 11*

5